IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DARYL ZAIN PERRY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CASE NO.  3:12-CV-913-WKW |
| | ) | [WO] |
| THE UNITED STATES OF | ) | |
| AMERICA, DEPARTMENT OF | ) | |
| TREASURY, INTERNAL REVENUE | ) | |
| SERVICE, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Appellant Daryl Zain Perry is a debtor in a Chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the Middle District of Alabama.  In October 2012, Mr. Perry initiated an adversary proceeding against the Internal Revenue Service to determine the dischargeability of debts he allegedly owed for federal income taxes for eleven tax years.[1]  After the parties resolved Mr. Perry's tax debts for seven of those tax years in Mr. Perry's favor, the bankruptcy court denied Mr. Perry's summary judgment motion and granted the Internal Revenue Service's

---

[1] Mr. Perry styled his adversary complaint as "*Perry v. United States of America, Department of Treasury, Internal Revenue Service*."  For brevity, the court refers to the appellee as the "Internal Revenue Service" and, occasionally, as the "IRS."

cross-motion on the basis that 11 U.S.C. § 523(a)(1)(B)(i) excepts from discharge Mr.

Perry's federal income tax debts for the tax years 1997, 1999, 2001, and 2003.

This matter comes before the court on Mr. Perry's appeal from the judgment

of the bankruptcy court in the adversary proceeding. For the reasons to follow, the

judgment of the bankruptcy court is due to be affirmed.

## II.  JURISDICTION AND VENUE

This is a core proceeding over which appellate jurisdiction is exercised. *See*

28 U.S.C. § 158(a). Venue is proper because an appeal "shall be taken only to the

district court for the judicial district in which the bankruptcy judge is serving." *Id.*

## III.  STANDARD OF REVIEW

The United States District Court functions as an appellate court when

reviewing decisions of the United States Bankruptcy Court. *Varsity Carpet Servs.,*

*Inc. v. Richardson* (*In re Colortex Indus., Inc.*), 19 F.3d 1371, 1374 (11th Cir. 1994).

It "independently examines the factual and legal findings of the bankruptcy court

using the same standards as did the [bankruptcy] court." *Martinez v. Hutton (In re*

*Harwell)*, 628 F.3d 1312, 1316 (11th Cir. 2010).

Pursuant to Federal Rule of Civil Procedure 56, incorporated into bankruptcy

adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "[t]he

court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Factual findings by the bankruptcy court are reviewed under the limited and deferential clearly erroneous standard." *Club Assocs. v. Consol. Capital Realty Investors ( In re Club Assocs.)*, 951 F.2d 1223, 1228 (11th Cir. 1992); *see also* Fed. R. Bankr. P. 8013.  Legal conclusions are reviewed *de novo*.  *Claremont McKenna Coll. v. Asbestos Settlement Trust* (*In re Celotex Corp.)*, 613 F.3d 1318, 1322 (11th Cir. 2010).  The court may affirm the bankruptcy court's judgment "on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below."  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

## IV.  BACKGROUND

The debtor/appellant is Mr. Perry.  The creditor/appellee is the Internal Revenue Service.  On December 20, 2011, Mr. Perry filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Alabama. On October 18, 2012, he commenced an adversary proceeding against the Internal Revenue Service seeking a ruling that his alleged debts for the tax years 1997 to 2007 were dischargeable pursuant to 11 U.S.C. § 523.  The Internal Revenue Service filed an answer, asserting that Mr. Perry's federal income tax debts for the tax years 1997, 1999, 2001, and 2003 were nondischargeable, but conceding that Mr. Perry did not

3

owe a debt for the remaining seven tax years.  Hence, only Mr. Perry's tax debts for the tax years 1997, 1999, 2001, and 2003 are at issue.

The bankruptcy court decided the adversary proceeding on cross-motions for summary judgment and undisputed facts.  Those facts are as follows.[2]  Mr. Perry did not file his federal income tax returns (Forms 1040) for the tax years 1997, 1999, 2001, and 2003 on the dates they were due.  Pursuant to the Internal Revenue Service's notice-of-deficiency procedures, *see* 26 U.S.C. § 6212, the Internal Revenue Service prepared substitute returns for the tax years 1997, 1999, and 2001 on February 9, 2004.  For the tax year 2003, the Internal Revenue Service prepared a substitute return on May 21, 2007.  The Internal Revenue Service prepares substitute returns pursuant to 26 U.S.C. § 6020.  (Dinita C. White's Decl. 2 (Ex. to Doc. # 2-9).)

Mr. Perry did not assist the Internal Revenue Service with the preparation of the substitute returns.  As reported on the Account Transcripts,[3] the substitute returns assessed deficiencies against Mr. Perry based upon the following taxable income: (1) $39,561 for 1997; (2) $50,014 for 1999; (3) $52,149 for 2001; and (4) $33,249

---

[2] The majority of the undisputed facts are set forth in a joint stipulation.  (*See* Jt. Stip. of Facts (Doc. # 2-7).)  Additional facts are set forth here that, although not included in the joint stipulation, also are not in dispute.

[3] The Account Transcripts, which are prepared by the Internal Revenue Service, are coded, computer-generated transcripts that show certain information in the official computer records of the Internal Revenue Service concerning Mr. Perry's tax histories with respect to the four tax years at issue.  (White Decl. 2 & Exs. A–D.)

for 2003.  On February 12, 2005, the Internal Revenue Service initiated efforts to collect the taxes assessed through the substitute returns.  The Internal Revenue Service placed liens on Mr. Perry's assets on January 13, 2006, due to the unpaid assessed 1997, 1999, and 2001 tax liabilities, and it placed a lien on Mr. Perry's assets on August 1, 2008, due to the unpaid assessed 2003 tax liability.  Moreover, the Internal Revenue Service sent notice to Mr. Perry prior to assessing liabilities for the four tax years at issue and again prior to placing liens on Mr. Perry's property. (*See* IRS's Mot. Summ. J. 5 (Doc. # 2-9); *see also* White's Decl. 1–3, and IRS's Account Transcripts (Exs. to IRS's Mot. Summ. J.).)

Between October 19, 2007, and January 3, 2008, Mr. Perry belatedly filed Form 1040 (individual income tax) returns for each of the four tax years at issue.  His returns reported taxable income in amounts substantially less than that reported on the Internal Revenue Services's substitute returns.  (*See* Perry's Forms 1040 (Doc. # 2-7).)  As a result, the Internal Revenue Service reduced Mr. Perry's tax liabilities for the tax years 1997, 1999, 2001, and 2003.  (*See generally* Doc. # 6, at 16 (citing Account Transcripts); *see also* Doc. # 6, at 20 (pointing out that "the IRS adjusted [Mr. Perry's] taxes based on the returns [he] filed").)

In sum, Mr. Perry failed to file his federal income tax returns for the tax years 1997, 1999, 2001, and 2003 until after the Internal Revenue Service sent notices of

5

deficiency and made its assessments of Mr. Perry's tax liabilities.  With respect to tax years 1997, 1999, and 2001, Mr. Perry further delayed filing his federal income taxes until after the Internal Revenue Service had placed liens on his assets.  To put the time line in perspective, Mr. Perry's Forms 1040 postdate the original filing deadlines by approximately four to ten years and postdate the substitute returns by four months to three-and-a-half years.  The following chart summarizes the relevant dates.

| Tax Year Ending Dec. 31 | Dates of IRS Assessments (Substitute Returns) | Dates IRS Began Collection Efforts | Dates IRS Placed Liens on Perry's Assets | Dates of Perry's Form 1040 Filings |
|---|---|---|---|---|
| 1997 | Feb. 9, 2004 | Feb. 12, 2005 | Jan. 13, 2006 | Oct. 15, 2007 |
| 1999 | Feb. 9, 2004 | Feb. 12, 2005 | Jan. 13, 2006 | Oct. 18, 2007 |
| 2001 | Feb. 9, 2004 | Feb. 12, 2005 | Jan. 13, 2006 | Oct. 20, 2007 |
| 2003 | May 21, 2007 | Feb. 12, 2005 | Aug. 1, 2008 | Oct. 27, 2007 |

Based on the undisputed facts, the bankruptcy court analyzed whether Mr. Perry's debts for the tax years 1997, 1999, 2001, and 2003 were nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B)(i), which excepts from discharge tax debts for which a tax return "was not filed or given."  (Bankr. Mem. Op. (Doc. # 2-10).) Examining § 523(a)'s hanging paragraph, which defines the term "return" for

discharge purposes,[4] the bankruptcy court observed that the Fifth Circuit and other courts "have unanimously concluded that [the hanging paragraph] excludes a late-filed return," unless it satisfies the "safe harbor" provision for late returns. (Bankr. Mem. Op. 5 (citing, among other cases, *McCoy v. Miss. State Tax Comm'n*, 666 F.3d 924 (5th Cir.), *cert. denied*, 113 S. Ct. 192 (2012)).) Applying *McCoy* and implicitly finding Mr. Perry did not file his Forms 1040 pursuant to the "safe harbor" provision, the bankruptcy court concluded that Mr. Perry's late-filed returns were not "return[s]" for discharge purposes under § 523(a)(1)(B)(i); thus, it held that § 523(a)(1)(B)(i) excepted Mr. Perry's tax debts from discharge. Accordingly, the bankruptcy court granted the Internal Revenue Service's summary judgment motion and denied Mr. Perry's summary judgment motion. This appeal followed.

## V. DISCUSSION

To place the bankruptcy court's ruling into proper context, the court begins with some discussion of the current and historical definition of a § 523(a) "return" and of the holding in *McCoy* (Part A). After that, the parties' arguments will be summarized (Part B) and analyzed in light of the relevant law (Part C). As discussed more fully below, the record presents three different legal theories for analyzing the

---

[4] The hanging paragraph appeared as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Some courts identify the hanging paragraph with an asterisk – "§ 523(a)(*)." This opinion refers to it as the "hanging paragraph."

bankruptcy court's ruling that § 523(a)(1)(B)(i) excepts from discharge Mr. Perry's federal income tax debts for the tax years 1997, 1999, 2001, and 2003. Under each theory, the bankruptcy court's judgment is due to be affirmed.

## A.    The Definition of "Return" (Pre- and Post-BAPCPA) and *McCoy's* Holding

Section 523(a)(1) provides a number of exceptions to the general rule that a debtor obtains a discharge of his or her debts in Chapter 7 bankruptcy proceedings. Under § 523(a)(1), a tax debt is excepted from discharge if it is a debt "with respect to which a return, or equivalent report or notice, if required[,] (i) was not filed or given . . . ." § 523(a)(1)(B)(i).

### 1.    *The definition of "return" pre-BAPCPA*

Pre-BAPCPA, the Bankruptcy Code did not define "return." In the absence of a statutory definition, the majority of courts, including all federal circuit courts that had confronted the issue, analyzed whether a document qualified as a return by applying a four-part test "under which the document must:  (1) purport to be a return; (2) be executed by the debtor under penalty of perjury; (3) contain sufficient data to allow calculation of the tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law." *Hamer v. United States (In re Hamer)*, 328 B.R. 825, 831 & n.9 (N.D. Ala. 2005) (citing *Beard v. Comm'r*, 82 T.C. 766 (1984),

*aff'd* 793 F.2d 139 (6th Cir. 1986) ("the *Beard* test")).  Historically, a taxpayer who

filed his return after the Internal Revenue Service had made an assessment faced an

insurmountable obstacle at the fourth element.  As explained by the bankruptcy court,

most courts applying this test concluded that "a debtor's tax liability was not

dischargeable because returns filed after the assessment of taxes by the IRS did not

qualify as 'returns' under § 523(a)(1)(B)(i)."  (Bankr. Mem. Op. 5 n.2.)  As the Sixth

Circuit has said:  "A purported return filed too late to have any effect at all under the

Internal Revenue Code cannot constitute 'an honest and reasonable attempt to satisfy

the requirements of the tax law.'"  *United States v. Hindenlang (In re Hindenlang)*,

164 F.3d 1029, 1034 (6th Cir. 1999).  The Fourth, Seventh, and Ninth Circuits also

reached similar conclusions.  *See Moroney v. United States (In re Moroney)*, 352 F.3d

902 (4th Cir. 2003); *In re Payne*, 431 F.3d 1055 (7th Cir. 2005); *United States v.

Hatton (In re Hatton)*, 220 F.3d 1057 (9th Cir. 2000).

## 2.   *The Definition of "Return" Post-BAPCPA*

As part of the BAPCPA, § 523(a) added a "hanging paragraph" that defines a

"return" as follows:

> For purposes of this subsection, the term "return" means a return that
> satisfies the requirements of applicable nonbankruptcy law (including
> applicable filing requirements).  Such term includes a return prepared
> pursuant to section 6020(a) of the Internal Revenue Code of 1986, or
> similar State or local law, or a written stipulation to a judgment or a final

9

order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a).

Section 6020(a), in turn, provides:

If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

26 U.S.C. § 6020(a). And Section 6020(b) provides that when an individual "fails to make any return required by any internal revenue law . . . or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise." As summarized in *McCoy*: "Section 6020(a) returns are those in which a taxpayer who has failed to file his or her returns on time nonetheless discloses all information necessary for the I.R.S. to prepare a substitute return that the taxpayer can then sign and submit." 666 F.3d at 928. However, "[i]n contrast, a § 6020(b) return is one in which the taxpayer submits either no information or fraudulent information, and the I.R.S. prepares a substitute return based on the best information it can collect independently." *Id.*

### 3.   McCoy *Holding/Rule*

The Fifth Circuit is the only circuit court of appeals that has addressed whether a late-filed return qualifies as a "return" under the definition in § 523(a)'s hanging paragraph.  In *McCoy*, the Fifth Circuit concluded that the first sentence of § 523(a)'s hanging paragraph provides "a clear definition of 'return' for both state and federal taxes."  666 F.3d at 930.  The requirement that a return must comply with "applicable nonbankruptcy law (including applicable filing requirements)" also encompasses any timeliness requirement contained in non-bankruptcy law.  *Id.* at 929.  It further held that the second sentence of § 523(a)'s hanging paragraph "carves out a narrow exception" to the first sentence's rule that a late-filed return is not a "return."  *Id.* at 931.  That exception comes into play when the return is filed pursuant to § 6020(a) or a state or local safe harbor provision analogous to § 6020(a).  *See id.* at 932.[5]

As recognized by other bankruptcy courts, *McCoy* creates a "*per se* rule that any late-filed return is not a 'return' for purposes of assessing the dischargeability of its related tax liability."  *Mallo v. United States (In re Mallo)*, ___ B.R. ___, 2013 WL 4873057, at *8 (D. Colo. 2013) (addressing dischargeability of federal income taxes);

---

[5] Although *McCoy* was decided in the context of a debtor who had filed untimely state income tax returns, the Fifth Circuit found support for its holding in the "post-BAPCPA holdings of the bankruptcy courts . . . in the context of federal income tax returns."  666 F.3d at 929 (collecting cases).  As discussed, courts have not limited *McCoy*'s reach to dischargeability issues pertaining to state income tax filings.

*accord Wogoman v. IRS (In re Wogoman)*, 475 B.R. 239, 244–45 (B.A.P. 10th Cir.

2012) ("In *McCoy*, the Fifth Circuit interpreted the first sentence of the hanging

paragraph added by BAPCPA to mean that a 'late-filed' tax return, even if filed prior

to assessment of the taxes by the taxing authority, is not a return for purposes of

§ 523(a)(1)(B)(i), unless it falls within the 'safe harbor' created for returns filed

pursuant to IRC § 6020(a) or similar state or local law provision.").

**B.      The Parties' Arguments on Appeal**

   *1.     Mr. Perry*

   Mr. Perry argues that the bankruptcy court erred in relying on *McCoy*.  He

gives three reasons why he thinks *McCoy* is "plainly wrong." (Doc. # 6, at 11.)  First,

he contends that the hanging paragraph does not limit qualifying late-filed returns

only to those filed under § 6020(a) or a similar state or local law.  (Doc. # 6, at 12.)

Second, Mr. Perry argues that because the Internal Revenue Code (which is the

"applicable nonbankruptcy law") neither defines a "return" nor provides that "a late-

filed return is not a return," the phrase "applicable filing requirement," as set out in

the hanging paragraph, should not be interpreted to include a timeliness requirement

for filing a tax return.  (Doc. # 6, at 11 & n.11.)  Third, Mr. Perry argues that an

interpretation of § 523(a)'s hanging paragraph that a late-filed return is not a return

would "negate" § 523(a)(1)(B)(ii), which expressly contemplates that some tax debts are dischargeable notwithstanding a late-filed return.  (Doc. # 6, at 11.)

Mr. Perry asks this court to disregard *McCoy* and instead to look to pre-BAPCPA case law that defined a "return."  Under pre-BAPCPA case law, Mr. Perry argues that his late-filed returns satisfy the *Beard* test, in particular the fourth element.  Hence, he argues that he filed "returns" for purposes of § 523(a)(1)(B)(i), and, therefore, this provision does not except his tax debts from discharge. (Doc. # 6, at 18–23.)

### 2.    *The Internal Revenue Service*

In the bankruptcy court, the Internal Revenue Service relied on *McCoy* and similarly minded decisions.  It argued that, because Mr. Perry delayed filing his returns until after the Internal Revenue Service had assessed his tax debts pursuant to substitute returns, the returns were not "return[s]" within the meaning of § 523(a)'s hanging paragraph.  Under this rationale and according to the Internal Revenue Service, § 523(a)(1)(B)(i) did not except Mr. Perry's tax debts from discharge because Mr. Perry did not file qualifying returns.  Alternatively, the Internal Revenue Service argued that under pre-BAPCPA case law and specifically the *Beard* test, Mr. Perry could not demonstrate that his returns represented an honest and reasonable attempt to satisfy the requirements of the tax law, such that the tax debts were

13

nondischargeable as ones with respect to which "returns" were not filed.  The Internal Revenue Service relied on the "weight of authority" precluding a debtor from "wait[ing] to see if the IRS will assess taxes on its own, and then submitting statements long after the IRS has been put to its costly proof."  (Doc. # 2-9, at 4 (citing *In re Moroney*, 352 F.3d at 906).)

On appeal, the Internal Revenue Service continues to rely on its alternative position (*i.e.*, the *Beard* test), but abandons its main position.  The Internal Revenue Service argues that "[a]n interpretation of the hanging paragraph is not required to hold that Mr. Perry's tax debts are excepted from discharge."  (Doc. # 9, at 6.)  It focuses instead on the assessments of Mr. Perry's tax debts.  It says that the assessments are the debts, not Mr. Perry's later-filed, untimely Forms 1040:  "[I]f at the time of assessment, no return has been filed, then the debt recorded by the assessment is a debt for which a return was not filed, and Section 523(a)(1)(B)(i) applies to except it from discharge."  (Doc. # 9, at 6.)  The Internal Revenue Service argues that because the assessment, not Mr. Perry's subsequently filed returns, established the tax debt, there is no need to decide whether the post-assessment returns satisfy the definition of a "return" under § 523(a)(1)(B)(i).

The Internal Revenue Service also asserts that adoption of its legal theory will "lead[ ] to less draconian results in other cases."  (Doc. # 9, at 6; *see also* Doc. # 9,

at 7 n.2 (asserting that its position "is more favorable to taxpayers than" the bankruptcy court's).) The Internal Revenue Service provides a hypothetical example that, had Mr. Perry reported additional amounts of tax in excess of the assessments rather than less, the portion of the tax that the Internal Revenue Service had not previously assessed would be dischargeable under § 523(a)(1)(B)(i).

Alternatively, the Internal Revenue Service says that under the pre-BAPCPA four-part *Beard* test, Mr. Perry cannot meet the fourth prong. It contends that "a Form 1040 filed after a deficiency assessment has been made fails to satisfy the fourth prong because a late-filed Form 1040 does not represent an honest and reasonable attempt to satisfy the requirements of tax law." (Doc. # 9, at 9.)

**C.    Analysis**

The aftermath of these arguments produces three options for resolving the appeal. First, there is the bankruptcy court's reasoning that relies on the Fifth Circuit's interpretation of § 523(a)'s hanging paragraph, *see McCoy*, 666 F.3d at 924, but oddly, not even the Internal Revenue Service wants that legal reasoning to prevail anymore. Second, there is the Internal Revenue Service's argument on appeal that because *McCoy* can lead to harsh results when, for example, the return is a day late, the nondischargeability of the tax debt should hinge instead on whether the Internal Revenue Service has made an assessment of the tax debt. Third, there is the pre-

BAPCPA, four-pronged *Beard* test upon which Mr. Perry principally relies and the Internal Revenue Service alternatively relies, with the pivotal issue being whether the late-filed returns satisfy the fourth prong.

The court finds that under either *McCoy*, the Internal Revenue Service's position, or the *Beard* test, Mr. Perry cannot prevail. Thus, regardless of the reasoning employed, the late-filed returns are excepted from discharge under § 523(a)(1)(B)(i), and the bankruptcy court's judgment is due to be affirmed.[6]

### 1.   *McCoy's Holding that Section 523(a)(1)(B)(i) Excepts All Late-Filed Returns from Discharge*

The bankruptcy court decided this case on the basis of *McCoy*, and it is not alone. Several bankruptcy courts have reached the same conclusion as *McCoy*, namely, that a late-filed return never qualifies as a return for dischargeability purposes under § 523(a)'s hanging paragraph.[7] *McCoy* is not, however, without

---

[6] The United States Bankruptcy Appellate Panel for the Tenth Circuit took a similar approach in *In re Wogoman*. *See* 475 B.R. at 239. In *In re Wogoman*, the court found that it did not have to decide "whether the hanging paragraph creates a much more restrictive rule than the *Beard* test developed by courts pre-BAPCPA," *id.* at 250, and further that "it matter[ed] not "whether [the court] adopt[ed] the Fifth Circuit's interpretation of the § 523(a) hanging paragraph in *McCoy* or the assessment rule advocated by the IRS," *id.* Under any theory, the debtors filed their federal income tax returns nearly five years late "without any reason justifying their delay" and "after the IRS had completed the burdensome process of determining their tax liability, providing the statutory notice of deficiency, assessing the taxes, and attempting collection." *Id.*

[7] *See Shinn v. IRS (In re Shinn)*, Bk. No. 10-83750, Adv. No. 10-8139, 2012 WL 986752, at *6 (Bankr. C.D. Ill. Mar. 22, 2012) ("[T]he new definition of 'return,' added by BAPCPA to

criticism.  At least one bankruptcy court has declined to follow *McCoy*.  *See In re Rhodes* ___ B.R. ___, 2013 WL 5291400, at *8 (Bankr. N.D. Ga. 2013) (discussing *McCoy*, but concluding that "§ 523(a)(*)'s requirement that a return satisfy 'applicable nonbankruptcy law (including applicable filing requirements)' does not include a timeliness requirement," meaning that "the mere fact that a debtor files a late tax return after the IRS has filed a return under 26 U.S.C. § 6020(b) and assessed the tax in order to collect it does not in and of itself disqualify it from consideration as a 'return' for purposes of § 523(a)(1)(B)(i)").  Other courts also have not employed *McCoy*'s reasoning, as noted in the margin.[8]  And even the bankruptcy judge in this

_____

section 523(a), means that an untimely filed 1040 cannot be considered to be a return for dischargeability purposes, unless the narrow exception in IRC § 6020(a) applies." (citing *McCoy* among other authorities)); *Hernandez v. United States (In re Hernandez)*, Bk. No. 10-53962, Adv. No. 11-5126, 2012 WL 78668, at *3 (Bankr. W.D. Tex. Jan. 11, 2012) (After *McCoy*, § 523(a)'s hanging paragraph "means that late filed returns can never qualify as filed, for purposes of section 523(a)(1), save for the narrow exception carved out in the added paragraph."); *Cannon v. United States (In re Cannon)*, 451 B.R. 204, 206 (Bankr. N.D. Ga. 2011) (finding persuasive other courts' reasoning that under the BAPCPA's definition of "return" in § 523(a)'s hanging paragraph "a late return can never qualify as a return unless it is filed under the § 6020(a) safe harbor provision"); *Links v. United States (In re Links)*, Nos. 08-3178, 07-31728, 2009 WL 2966162, at *5 (Bankr. N.D. Ohio Aug. 21, 2009) ("The definition of 'return' under § 523(a)['s hanging paragraph] . . . necessarily encompasses the filing deadlines for submitting returns contained in the Internal Revenue Code so that a late filed return cannot qualify as a return for purposes of a dischargeability determination."); *Creekmore v. IRS (In re Creekmore)*, 401 B.R. 748, 751–52 (Bankr. N.D. Miss. 2008) (The "definition of 'return' in amended § 523(a)['s hanging paragraph] apparently means that a late filed income tax return, unless it was filed pursuant to § 6020(a) . . . can never qualify as a return for dischargeability purposes because it does not comply with the 'applicable filing requirements' set forth in the Internal Revenue Code.").

[8] *Brown v. Mass. Dep't of Revenue (In re Brown)*, 489 B.R. 1, 5 (Bankr. D. Mass. 2013) (finding that an interpretation of § 523(a)'s hanging paragraph that any late-filed Massachusetts

case acknowledged in a post-judgment hearing that *McCoy* can result in "potentially harsh results" where the taxpayer files a return one-day late. *Perry v. IRS*, Ch. 7 Case No. 11-81998, Adv. No. 12-08006, at 9 (Bankr. M.D. Ala. Oct. 15, 2012) (hearing on motion for stay of execution of judgment (Doc. # 56)).  Notwithstanding *McCoy*'s potentially harsh results, the bankruptcy court found *McCoy*'s reasoning persuasive.

Applying *McCoy*, the bankruptcy court found that none of Mr. Perry's late-filed returns satisfied the definition of a "return" set out in § 523(a)'s hanging paragraph:  Mr. Perry filed the returns late, and § 6020(a) offered no safe harbor. Consequently, Mr. Perry did not file a tax return for purposes of § 523(a)(1)(B)(i); thus, § 523(a)(1)(B)(i) excepted from discharge Mr. Perry's tax debts for the tax years 1997, 1999, 2001, and 2003.  (Bankr. Mem. Op. 3–6); *see also* § 523(a)(1)(B)(i) (A discharge under Chapter 7 "does not discharge an individual debtor from any debt . . . for a tax . . . with respect to which a return . . . if required . . . was not filed or given.").

If the court were to adopt *McCoy*'s approach, it would reach the same result as the bankruptcy court.  Under *McCoy*'s interpretation of § 523(a)'s hanging paragraph,

---

return is not a return for dischargeability purposes "simply does too much violence to the statute"); *Pitts v. United States (In re Pitts)*, 497 B.R. 73, 81 (Bankr. C.D. Cal. 2013) (adopting *Brown*'s "more moderate position"); *see also* Norton Bankr. Law Adviser, Morgan D. King, *Tolstoy, Discharging Taxes, & the Fifth Circuit* ("Just when we all thought the . . . ruling – that a late-filed tax return is, by definition, not a return –  was killed off by the IRS, along comes the Fifth Circuit and finds the rule still alive.  Run!")).

the debtor must file a tax return timely to satisfy "applicable filing requirements," save one narrow exception. That exception applies where the return is "prepared pursuant to [§] 6020(a) or similar state or local law." § 523(a) (hanging paragraph). That exception does not provide a safe harbor for Mr. Perry.

It is undisputed that Mr. Perry did not file timely Forms 1040 for the tax years 1997, 1999, 2001, and 2003. It also is undisputed that Mr. Perry did not assist the Internal Revenue Service with the preparation of the substitute returns so as to qualify those returns as § 6020(a) returns. *See generally In re Wogoman*, 475 B.R. at 249 (noting that the Internal Revenue Service has "commented that it prepares a return for the taxpayer's signature under § 6020(a) in only a minute number of cases"). Additionally, Mr. Perry makes no argument that his late-filed Forms 1040 satisfy the requirements under § 6020(a) or similar state or local law under which late-filed Forms 1040 could qualify as returns.

Accordingly, under *McCoy*, because neither Mr. Perry's untimely tax returns for the tax years 1997, 1999, 2001, and 2003 nor the Internal Revenue Service's substitute returns qualify as § 6020(a) returns (or their equivalent under state or local law), the returns are not returns for discharge purposes. Accordingly, *McCoy* dictates that Mr. Perry's tax debts for the four tax years at issue are excepted from discharge under § 523(a)(1)(B)(i). Mr. Perry concedes this result under *McCoy*, but instead

thinks *McCoy* got it "plainly wrong."  (Doc. # 6, at 11; *see also* Doc. # 6 ("[I]f the returns had never been filed, pursuant to 11 U.S.C. § 523(a)(1)(B)(i), the taxes would be nondischargeable." (citing Jt. Stip. of Facts).)

Mr. Perry offers two arguments why he says this case is distinguishable from *McCoy*, but neither argument is persuasive.  First, Mr. Perry argues that under a liberal construction of the discharge exceptions in his favor, his late-filed returns should alternatively be deemed "equivalent report[s] or notice[s]" within the meaning of § 523(a)(1)(B).[9]  (Doc. # 6, at 14.)  Mr. Perry's brief does not include supporting authority or, for that matter, mention the contrary authority.

The Fourth Circuit rejected the argument that Congress amended § 523(a)(1)(B) to "allow dischargeability of tax debt for debtors who failed to file a required return but nevertheless gave or filed an equivalent report or notice." *Maryland v. Ciotti (In re Ciotti)*, 638 F.3d 276, 279 (4th Cir. 2011).  It concluded that in amending § 523(a)(1)(B), "Congress determined that the same policy reasons that justify precluding the discharge of tax debt when the debtor failed to file a return also justify precluding the discharge of the tax debt when the debtor failed to file or give

---

[9] The BAPCPA added the phrase "or the equivalent report or notice" to § 523(a)(1)(B). *See* § 523(a)(1)(B)(i) (providing that a tax debt is excepted from discharge if it is a debt "with respect to which a return, or equivalent report or notice, if required (i) was not filed or given . . . .").

a required report or notice corresponding to that debt." *Id.* at 279–80; *see also Green v. United States (In re Green)*, 472 B.R. 347, 364 (Bankr. W.D. Tex. 2011) ("The purpose of the 'equivalent report or notice' language in § 523(a)(1)(B) is to preclude the discharge of debt when the debtor failed to file a report or notice relating to the tax liability that was required in *addition* to a tax return.").   An authoritative bankruptcy treatise is in accord:

> The reference [in the amended § 523(a)(1)(B)(i)] to the failure to provide "notice" means that if a debtor is obligated under nonbankruptcy law to file an amended return or give notice to a governmental unit of an amendment or correction to a prior filed federal tax return, the failure to do so will render nondischargeable any corresponding tax liability to the governmental unit.

*Collier on Bankruptcy* ¶ 523.07 (16th ed. 2010).

Given Mr. Perry's failure to cite any contrary authority or provide any criticism of the weight of authority, the court finds the Fourth Circuit's reasoning in *Ciotti* persuasive.   Mr. Perry filed his Forms 1040 with respect to his original federal income tax obligations, not additional tax obligations arising from any previously filed return.   The "equivalent report or notice" language, therefore, does not encompass Mr. Perry's Form 1040 filings.

Second, Mr. Perry argues that because the Internal Revenue Service admits that he eventually filed returns, it cannot now argue that the "'returns' are not returns"

under § 523(a)(1)(B). (Doc. # 6, at 26–27.) This argument mixes apples (factual issues) and oranges (legal issues). It is an undisputed fact that Mr. Perry filed Form 1040 returns for the tax years at issue (albeit very late), but that fact is not the equivalent of a legal conclusion that the late-filed returns satisfy the definition of a "return" for purposes of discharge, as provided in § 523(a)'s hanging paragraph. Application of the *McCoy* holding to the undisputed facts results in a legal conclusion that the late-filed returns do not satisfy the definition of "return" for purposes of discharge.

### 2.     *The Internal Revenue Service's Position*

The Internal Revenue Service relies on *Smythe v. United States (In re Smythe)*, Bk. No. 11-04077, Adv. No. 11-04077, 2012 WL 843435 (Bankr. W.D. Wash. Mar. 12, 2012), which not coincidentally adopted its position. In *In re Smythe*, the debtors did not file their overdue federal income tax returns (Forms 1040) until after the Internal Revenue Service had assessed deficiencies on the debtors for the tax years at issue. *See id.* at *1. The Internal Revenue Service argued there, as it does here, that the "tax debts [were] nondischaregeable because the debts [were] base[d] on the I.R.S. assessments, and not on the Debtors' Forms 1040, so that the assessments [were] tax debts for which no returns were filed or given under § 523(a)(1)(B)(i)." *Id.* at *2.

Addressing this argument, *In re Smythe* looked first to the Bankruptcy Code's definition of "debt":

> The Bankruptcy Code defines "debt" as "liability on a claim."
> § 101(12). A "claim" means a "right to payment, whether or not such
> right is reduced to judgment, liquidated, unliquidated, fixed, contingent,
> matured, unmatured, disputed, undisputed, legal, equitable, secured, or
> unsecured." § 101(5)(A). A "right to payment" is an "enforceable
> obligation." *Cohen v. De La Cruz (In re Cohen)*, 523 U.S. 213, 218
> (1998). In tax law, a tax assessment "is the official recording of liability
> that triggers levy and collection efforts." *Hibbs v. Winn*, 542 U.S. 88,
> 101 (2004).

*Id.* at *3. Based on a "plain language reading" of the code's definition of "debt," it found:

> When the I.R.S. made tax assessments against the Debtors, the Debtors'
> tax obligations became enforceable and the I.R.S. could pursue its
> claims; therefore, the assessments created "debt[s]" as defined in the
> Bankruptcy Code. Although the Debtors subsequently filed Forms
> 1040, the tax debts had already been established by the I.R.S.
> assessments. The tax debts, therefore, are debts "for which no return
> was filed," and are nondischargeable under § 523(a)(1)(B)(i).

*Id.* at *3. In light of its finding, the court observed that "whether the Debtors' post-assessment Forms 1040 qualify as 'return[s]' under § 523(a)(1)(B)(i) is irrelevant." *Id.*

At least two other courts have adopted this "more moderate position" that "if the late return was filed prior to any assessment by the IRS, then the taxes would be dischargeable under § 523(a)(1)(B)." *In re Pitts*, 497 B.R. at 81 (citing *In re Brown*,

489 B.R. at 5); *but see Martin v. United States (In re Martin)*, ___ B.R. ___, 2013 WL 5323350, at *6 (D. Colo. 2013) ("[T]he IRS' official position – that a tax liability assessed by the IRS prior to the subsequent filing of a 1040 by the taxpayer is not a 'debt for which a return was filed' – is not supportable by the statutory language of § 523(a)(1)(B)(i).").

Applying *In re Smythe*'s reasoning, the court again would reach the same result on the facts of this case and, thus, the same conclusion as the bankruptcy court. The IRS assessment is the critical event under *In re Smythe*, and where the assessment precedes the debtor's filing of tax returns, the assessment creates the debt for which the debtor did not file a return. As in *In re Smythe*, the Internal Revenue Service assessed Mr. Perry's taxes after he failed to timely file tax returns. Because Mr. Perry delayed filing his tax returns until after the assessments were made, *In re Smythe* dictates that Mr. Perry's tax debts were excepted from discharge pursuant to § 523(a)(1)(B)(i). Thus, under *In re Smythe*'s reasoning, the bankruptcy court's ruling that Mr. Perry's 1997, 1999, 2001, and 2003 tax debts are excepted from discharge is due to be affirmed.

Mr. Perry suggests, however, that the Internal Service Revenue cannot prevail under *Smythe*'s logic because it has not put into evidence the § 6020(b) substitute returns and, thus, has not proven that there actually were assessments. (Doc. # 6,

at 27.)  This argument fails for the simple reason that it ignores the parties' stipulation of facts.  In the adversary proceedings, Mr. Perry stipulated to the dates that the Internal Revenue Service filed "substitute returns" and the dates he untimely filed his Forms 1040, and those dates establish, without dispute, that Mr. Perry's filings occurred after the Internal Revenue Service's filings of "substitute returns."  At no time, apparently until now, has Mr. Perry contended as a factual matter that the substitute returns were insufficient to assess Mr. Perry's tax liabilities for the tax years at issue, and he cannot contradict the stipulated facts for the first time in these appellate proceedings.[10]

### 3.    The Beard Test

Up to this point, the court has found that under either *McCoy* (relied upon by the bankruptcy court below) or *In re Smythe* (relied upon by the Internal Revenue Service on appeal), the bankruptcy court's judgment is due to be affirmed.  The

---

[10]  It should be pointed out that Mr. Perry spills much ink on § 523(a)(1)(B)(ii), arguing that this exception to discharge clearly does not apply.  Throughout this litigation, the Internal Revenue Service has agreed with this point.  (*See* Doc. # 9, at 5 n.1, in which the IRS concurs that the exception in § 523(a)(1)(B)(ii) "does not apply to this case"); (*see also* Doc. # 2-9, in which the IRS conceded (at summary judgment) that if Mr. Perry's filings amount to "'returns,' then the taxes are dischargeable under § 523(a)(1)(B)(ii) because the returns were filed more than two years before the bankruptcy Petition date of December 20, 2011.")  The inapplicability of one § 523(a)(1)(B) exception to discharge does not mean that another exception cannot apply, as § 523(a)(1)(B) lists the exceptions in the disjunctive.  The Internal Revenue Service sought to except Mr. Perry's tax debts under § 523(a)(1)(B)(i), not § 523(a)(1)(B)(ii), and likewise, the bankruptcy court's decision rested on the exception to discharge in § 523(a)(1)(B)(i), not § 523(a)(1)(B)(ii).

remaining issue is whether under the four-part *Beard* test, Mr. Perry's late-filed returns qualify as § 523(a)(1) returns.  Mr. Perry and the Internal Revenue Service disagree on the outcome of the *Beard* test when applied to the facts of this case.  Mr. Perry argues that under the *Beard* test, his belated returns qualify as "returns" for purposes of § 523(a)(1)(B)(i).  The Internal Revenue Service says otherwise.

Some courts have concluded that the four-part "*Beard* test" remains relevant in the post-BAPCPA world because the test is the "applicable nonbankruptcy law" (pursuant to the first sentence of § 523(a)'s hanging paragraph) used to determine whether the debtor's document is a "return" under § 523(a)(1)(B).  *See, e.g.*, *In re Martin*, 2013 WL 5323350, at *7. Other courts have reached the opposite conclusion. *See, e.g.*, *In re Shinn*, 2012 WL 986752, at *6 (concluding that the definition of "return" set out in § 523(a)'s hanging paragraph "abrogated the *Beard* test").  If it is assumed that the *Beard* test remains relevant post-BAPCPA, the Internal Revenue Service has the better argument.

To recap, under the *Beard* test, "the document must:  (1) purport to be a return; (2) be executed by the debtor under penalty of perjury; (3) contain sufficient data to allow calculation of the tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law."  *In re Hamer*, 328 B.R. at 831 (citing *Beard*, 82 T.C. at 777).

The Internal Revenue Service assumes for the sake of argument that Mr. Perry's tax returns satisfy the first three prongs of the *Beard* test, and the court will do the same.  The only issue, as generally is the case, is whether the late filings represent "an honest and reasonable attempt to satisfy the requirements of the tax law" so as to satisfy the fourth prong of the *Beard* test.  *In re Hindenlang*, 164 F.3d at 1033 (citation and internal quotation marks omitted).

In *In re Hindenlang*, the Sixth Circuit held "as a matter of law that a Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code."  *Id.* at 1034.  "A purported return filed too late to have any effect at all under the Internal Revenue Code cannot constitute an honest and reasonable attempt to satisfy the requirements of the tax law."  *Id.* (citation and internal quotation marks omitted).  There, the debtor did not offer any tax purpose for his late filings, and the Sixth Circuit conceived none.  It observed, for example, that a post-assessment return would not affect the statutes of limitations governing the Internal Revenue Service's collection and assessment activities and would not mitigate any potential civil or criminal liability.  *Id.* at 1035.  The *In re Hindenlang* court held as a matter of law that the debtor's belated federal income tax returns were not "return[s]" under § 523(a)(1)(B).

27

Although the Fourth and Seventh Circuits largely aligned with the Sixth Circuit's decision in *In re Hindenlang*, these two circuits stopped short of adopting the Sixth Circuit's bright-line rule that a post-assessment filing can never amount to a § 523(a)(1)(B)(i) return. The Fourth Circuit observed, for example, that a situation where a post-assessment filing increased a taxpayer's liabilities "might demonstrate that the debtor, despite his delinquency, had attempted in good faith to comply with the tax laws." *In re Moroney*, 352 F.3d at 907. The Seventh Circuit also recognized that a taxpayer might demonstrate a reasonable endeavor to comply with tax laws where he or she "had tried to file a timely return but had failed to do so because of an error by the Postal Service." *In re Payne*, 431 F.3d at 1058.

Based upon the foregoing authorities, the court finds as a matter of law that Mr. Perry did not make a reasonable endeavor to satisfy his tax obligations. His Forms 1040 were not just late, but very late. They postdate the original filing deadlines by approximately four to ten years. Mr. Perry delayed so long that by the time he got around to filing his Forms 1040, the Internal Revenue Service had sent notices of deficiencies, had completed the arduous task of calculating the taxes he owed, had assessed his tax liabilities, and had commenced collection activities. It hardly seems coincidental or an act of good faith that, when hit with liens on his property and the reality of paying a substantial amount of back taxes, penalties, and interest, Mr. Perry

finally filed belated Forms 1040 that reveal lesser liabilities than the Internal Revenue Service had assessed.  *See In re Moroney*, 352 F.3d at 905 (affirming summary judgment in favor of the IRS where the debtor "did not explain . . . why his eventual filings were anything other than self-serving attempts to reduce his tax liabilities").

Moreover, it is undisputed that the circumstances cited in *In re Moroney* and *In re Payne* do not exist here.  Mr. Perry's post-assessment filings did not establish that he owed more taxes than the Internal Revenue Service had assessed; rather, the opposite is true.  Nor has Mr. Perry made any argument that the postal service is to blame for his tardy filings.  Mr. Perry's excuse – that he did not believe that he owed taxes for the years in question – simply does not explain why he waited more than three-and-half-years to file returns after the Internal Revenue Service had assessed his liabilities for the tax years 1997, 1999, and 2001, or why he waited more than two-and-a-half years to file his returns after the Internal Revenue Service had commenced collection efforts for the four tax years at issue.  His assertion that he started working on his tax forms when he "became aware" that the IRS said he owed them is too vague as to the time frame to close the temporal gap.  (Perry's Aff. (Doc. # 2-12).)  Mr. Perry does not say when he "became aware," but crediting the assertion for what it is worth, it does not contradict the undisputed evidence that places that date at the latest when the IRS made the assessments in February 2005.  (*See* White's

Decl. 1–3 (representing that the Internal Revenue Service sent notice to Mr. Perry prior to assessing liabilities for the four tax years at issue and again prior to placing liens on Mr. Perry's property).)  What seems to be clear is that when finally Mr. Perry had no choice but to pay the taxes, he filed his late Forms 1040.  *See In re Moroney*, 352 F.3d at 906 ("[T]o belatedly accept responsibility for one's tax liabilities, only when the IRS has left one with no other choice, is hardly how honest and reasonable taxpayers attempt to comply with the tax code.").

But Mr. Perry argues that, unlike in *In re Hindenlang*, his late-filed returns served a tax purpose because the Internal Revenue Service relied on them "for multiple assessments and entries as indicated by [its] tax transcripts," including to reduce his tax liabilities.  (Doc. # 6, at 21.)  The debtor in *In re Moroney* made a similar argument, and the Fourth Circuit rejected it as "miss[ing] the point." 352 F.3d at 906.  The debtor pointed out that his late-filed statements showed "lesser liabilities than the IRS had estimated" and resulted in the Internal Revenue Service's abatement of portions of its assessment.  *Id.*  The debtor argued that his filings must have been reasonable and honest since "after all, the IRS credited them enough to reduce his assessments."  *Id.*  The Fourth Circuit explained that the focus of the *Beard* test's fourth element is not whether the debtor's "eventual effort had some effect on his tax liability" because this focus would permit discharge to turn on whether the Internal

Revenue Service got it right in making the assessments. *Id.* The debtor should not be permitted to benefit "from the IRS's resulting imprecision (which was hardly surprising, given [the debtor's] lack of assistance)." *Id.* at 907.

Holding that the debtor's untimely filed federal income tax returns were excepted from discharge under § 523(a)(1)(B)(i), the Fourth Circuit concluded that "[d]ebtors like Moroney cannot seek the safe haven of bankruptcy by failing to file tax returns, waiting to see if the IRS assesses taxes on its own, and then submitting statements long after the IRS has been put to its costly proof." *Id.*; *see also Colsen v. United States (In re Colsen)*, 446 F.3d 836, 839 (8th Cir. 2006) (explaining that the Fourth Circuit in *In re Moroney* "explicitly refused to hold that 1040 forms serve a tax purpose if they cause an abatement of a debtor's estimated tax liabilities"). Based on *In re Moroney*, this court rejects Mr. Perry's arguments.

Mr. Perry's untimely filings do not create a genuine dispute of material fact that all of a sudden in 2007 Mr. Perry honestly endeavored to comply with the tax laws he had evaded for many years. Mr. Perry's late filings do not represent "an honest and reasonable attempt to satisfy the requirements of the tax law" so as to satisfy the fourth prong of the *Beard* test. *In re Hindenlang*, 164 F.3d at 1033 (citation and internal quotation marks omitted). Accordingly, applying the *Beard* test, the court finds that Mr. Perry's tax liabilities for the years 1997, 1999, 2001, and 2003 are the

31

result of his failure to file tax returns within the meaning of § 523(a)(1)(B)(i).  Under this theory, Mr. Perry's debts are not dischargeable, and the bankruptcy court's judgment is due to be affirmed.

### 4. *Summary*

The bankruptcy court's decision and the parties' arguments present three different theories for determining whether Mr. Perry's tax debts for the four years at issue are excepted from discharge under § 523(a)(1)(B)(i).  Based on the facts, no matter which theory the court applies, the result is the same:  Mr. Perry's tax debts are not excepted from discharge, and the bankruptcy court's order excepting those debts from discharge is due to be affirmed.

## VI. CONCLUSION

The bankruptcy court did not err in excepting from discharge Mr. Perry's federal income tax debts for the years 1997, 1999, 2001, and 2003 on the basis of 11 U.S.C. § 523(a)(1)(B)(i).  Accordingly, it is ORDERED that the decision of the bankruptcy court granting the Internal Revenue Service's summary judgment motion and denying Mr. Perry's summary judgment motion is AFFIRMED.

A separate judgment will be entered.

DONE this 30th day of October, 2013.

                              /s/ W. Keith Watkins
                    CHIEF UNITED STATES DISTRICT JUDGE